## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>FIBAR GROUP S.A., and NICE S.P.A.,<br><br>*Defendants.* | Civil Action No. 2:25-cv-00033<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC (hereinafter, "IoT Innovations" or "Plaintiff") files this Complaint for Patent Infringement against Defendants Fibar Group S.A. and Nice S.p.A. (collectively hereafter, "**Fibaro**" or "**Defendants**") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | https://patentcenter.uspto.gov/applications/10859735<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830 |
| 2. | 7,379,464 | Personal Digital Gateway | https://patentcenter.uspto.gov/applications/10306504<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7379464 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 3. | 7,474,667 | Multi-Path Gateway Communications Device | https://patentcenter.uspto.gov/applications/11879576 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7474667 |
| 4. | 7,567,580 | Edge Side Assembler | https://patentcenter.uspto.gov/applications/11787977 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7567580 |
| 5. | 7,593,428 | Apparatus, And Associated Method, For Forming, And Operating Upon, Multiple-Checksum-Protected Data Packet | https://patentcenter.uspto.gov/applications/11621545 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| 6. | 8,085,796 | Methods, Systems, And Products For Virtual Personalized Networks | https://patentcenter.uspto.gov/applications/12126137 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8085796 |
| 7. | 8,972,576 | Establishing A Home Relationship Between A Wireless Device And A Server In A Wireless Network | https://patentcenter.uspto.gov/applications/10833381 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8972576 |

2.    IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.    IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    Upon information and belief, Defendant Fibar Group S.A. ("**Fibar**") is a corporation organized and existing under the laws of Poland, with its principal place of business at Serdeczna 3 Street, 62-081 Wysogotowo, Poland.   Upon information and belief, Fibar Group S.A. does

business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, located in the Judicial District of the Eastern District of Texas.

5.    Upon information and belief, Defendant Nice S.p.A. ("Nice") is a corporation organized and existing under the laws of Italy, with its principal place of business at Via Callalta, 1 31046 Oderzo (TV), Italy.  Upon information and belief, Nice S.p.A. does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

6.    Defendants own, and are parent companies of, Fibaro[1] and have authorized sellers and sales representatives that offer and sell Fibaro products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as the Walmart Marshall Supercenter, 1701 E, End Blvd N, Marshall, Texas, 75670, as indicated below.

---

[1] *See Nice acquires FIBARO, one of the major players in the Smart Home, consolidating its global leadership position in the Home Automation and Home Security sector*, NICE (July 13, 2018), https://www.niceforyou.com/en/magazine/nice-acquires-fibaro-one-major-players-worldwide-smart-home-consolidating-its-global.



Figure 1. *Fibaro*, Walmart (last visited Jan. 9, 2025),
https://www.walmart.com/search?q=fibaro.

## JURISDICTION AND VENUE

7.    IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 as to Defendants at least because, among other things, they are not residents of the United States and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).  *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

10.    Defendants are subject to this Court's specific and general personal jurisdiction under due process because of Defendants' substantial business in this District, in the State of Texas, and

in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

11.     Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through inducement of third parties, and offers their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

12.     Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendants regularly sell (either directly or indirectly), their products within this District.  For example, Defendants have placed and continue to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.  Defendants are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and District, including their infringing activities alleged herein, from which Defendants derive substantial revenue from goods sold to Texas residents and consumers.

13.     Defendants offer products and services and conducts business in this District as described below.

14.     Defendants ship and cause to be shipped into the District infringing products and

materials instructing its customers to perform infringing activities to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

15.     Defendants commit acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

16.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.     Defendants use, cause to be used, sell, offer for sale, provide, supply, or distribute various smart home platforms and systems, including but not limited to the "Accused Products" set forth below and as outlined in the Evidence of Use charts attached hereto.

- Applications, including:

  - Yubii Home app;

  - Yubii Home Center app;

  - Fibaro app;

  - Nice G.O. app;

  - SpeakerCraft Sub Station app;

  - Nice Mobile Viewer app;

  - BlueBOLT Mobile app;

  - FIBARO Installer app;

  - FIBARO Intercom app;

  - Gefen Discovery Tool app;

- o SpeakerCraft app;

- o SpeakerCraft Sub Station app;

- o 2GIG Security Dealer Toolkit app;

- o Abode app;

- o HySecurity Installer app;

- o MyNice World Plus app;

- o MyNice Welcome app;

- o MyNice Welcome HK app;

- o Nice Industrial app;

- o MyNice Pro app;

- o MyNice app;

- o PROFICIENT Sub Station app;

- o Nice G.O. app; and

- o Fibaro app.

- Gateways, including:

  - o FIBARO Home Center 3;

  - o FIBARO Home Center 2;

  - o FIBARO Home Center Lite;

  - o FIBARO Home Center 3 Lite;

  - o Yubii Home gateway;

  - o Yubii Home Pro; and

  - o Abode Gen 2 Gateway.

- 2GIG Remote Keypad;

- 2GIG Edge Panel;

- 2GIG Edge Remote Keypad;

- 2GIG E+ Extended Range sensors;

- 2GIG E+ Extended Range;

- 2GIG Edge Security Panel & Home Automation Hub;

- 2GIG EDGE Security and Automation Panel;

- 2GIG Encrypted Sensors;

- 2GIG Window & Door Sensors;

- 2GIG Notification Sensors;

- 2GIG Intrusion and Life Safety Sensors;

- 2GIG Z-Wave Automation and Accessories;

- 2GIG Indoor HD WiFi Camera;

- 2GIG Security and Automation Panel;

- 2GIG Indoor WiFi Camera;

- 2GIG Indoor Wi Fi Pan.Tilt Camera;

- 2GIG Indoor/Outdoor WiFi Bullet Camera;

- Mighty Mule Wireless Connectivity Kit (MMS100);

- Mighty Mule Smart Gate Openers;

- Nice Smart Homes

  o Nice DC12-IP;

  o Nice DC12-IP Smart DC Power Manager;

  o Nice HR40;

  o Nice SC4-100;

- o  Nice Sun Shades;

- o  Nice Video doorbell;

- 2GIG Z-Wave Smart Garage Door Controller;

- Abode Outdoor Smart Camera;

- Abode Wireless Video Doorbell;

- Abode Security Kit;

- Abode Color Bulb;

- Abode Cam 2;

- Abode Security Systems;

- Abode Cameras & Doorbells;

- Abode Door & Window Protection;

- Abode Lock;

- Abode Smart Devices;

- Fibaro Smart Devices;

- Fibaro Wall Plug;

- FIBARO HubPowerBank;

- Yubii Home Pro;

- Yubii Home Center;

- Yubii Home Gateway;

- ELAN EL-ITP-12;

- ELAN EL-ITP-8;

- ELAN EL-SC-100-ZW System Controller;

- ELAN EL-IO-200 Control Extender;

- ELAN EL-SC-300-ZW System Controller;

- ELAN Remotes;

- ELAN touch panel;

- ELAN System Controllers;

- GC2e Security & Control Panel;

- HySecurity Smart Touch;

- HySecurity HydraWedge SM50;

- HySecurity StrongArm M30/M50;

- HySecurity SlideDriver;

- HySecurity HydraSwing;

- HySecurity SwingRiser;

- HySecurity StrongArm;

- HySecurity HydraLift;

- Nice EL-HR40;

- Nice EL-HR30;

- Nice EL-HR10;

- Nice Subwoofers;

- Nice Amplifiers;

- Nice Voice Assistant;

- Nice Premium 3.5 Audio System for Small Openings;

- Nice Elevated Performance;

- FIBARO Intercom (FGIC-001 and FGIC-002);

- FIBARO Walli;

- FIBARO Heat Controller;

- Fibaro Intercom;

- FIBARO Sensors;

- FIBARO Wall Plug;

- FIBARO Switches;

- FIBARO Dimmer 2;

- FIBARO RGBW Controllers 2;

- FIBARO Roller Shutter 3;

- Nice EL-SC-150 System Controller;

- Linear Cameras;

- Linear NVRs;

- Linear Garage Door Operators;

- Smart Implant;[2] and

- Proficient subwoofers.[3]

18.    Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes, including for the smart home functionality provided by the same. *See, e.g.*, *Hub for Yubii ecosystem*, NICE (last visited Jan. 10, 2025),    https://www.niceforyou.com/sites/default/files/upload/manuals/IS0923A00EN.pdf (providing the instruction manual for installing and using the Yubii Home Pro).

---

[2]    *See Smart Implant*, FIBARO    (last    visited    Jan.    13,    2025), https://www.fibaro.com/en/products/smart-implant/.
[3]    2GIG, ELAN, HySecurity, Linear, abode, Fibaro, Furman, Proficient, SpeakerCraft, Mighty Mule, and Gefen are all brands of Nice. *See One portfolio, endless opportunities*, NICE (last visited Jan. 10, 2025), https://na.niceforyou.com/.

19.    Defendants also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners.  *See, e.g.*, *Home Management Partners*, Nice (last visited Jan. 10, 2025), https://na.niceforyou.com/find-an-expert/home-management/ (stating that Aspen Electronic Systems LLC is Nice's home management partner at "1304 A Five Notch Rd, Marshall, TX 75670."); *see also Support*, Aspen Electronic Systems, LLC (last visited Jan. 10, 2025), https://www.aspen-es.com/support.php (including, among other 2GIG products, the 2GIG Edge Panel User Manual available for download).  Those sales occur in the United States, and throughout Texas, including in this District.

20.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,280,830

21.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.    The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* '830 patent at p. 1.

23.    IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

24.    The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a

new device through the establishment of a home relationship with a network server.

25.     The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.     Defendants have directly infringed one or more claims of the '830 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

27.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '830 patent.

28.     As just one example, Defendants, through the use and provision of the Accused Products, perform a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

29.     As another example, Defendants, through the use and provision of the Accused Products, perform a method for automatic registration of a new wireless device with a registration

server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

30.    Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

31.    Defendants willfully blinded themselves to the existence of the '830 patent and Defendants' infringement, but Defendants had actual knowledge of the '830 patent since at least the time of receiving the original complaint in this action.

32.    Defendants have also indirectly infringed the '830 patent by inducing others to directly infringe the '830 patent.

33.    Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '830 patent by providing or requiring use of the Accused Products.

34.    Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent.

35.    Such steps by Defendants included, among other things, advising or directing

personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

36.     Defendants are performing these steps, which constitute induced infringement with the knowledge of the '830 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '830 patent.

37.     Defendants' inducement is ongoing.

38.     Defendants have also indirectly infringed by contributing to the infringement of the '830 patent.

39.     Defendants have contributed to the direct infringement of the '830 patent by their personnel, contractors, and customers.

40.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent.

41.     The special features constitute a material part of the invention of one or more of the claims of the '830 patent and are not staple articles of commerce suitable for substantial non-infringing use.

42.     Defendants' contributory infringement is ongoing.

43.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

44.    Defendants' direct infringement of one or more claims of the '830 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

45.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

46.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '830 patent.  Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,379,464

48.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

49.    The USPTO duly issued U.S. Patent No. 7,379,464 (hereinafter, the "'464 patent") on May 27, 2008, after full and fair examination of Application No. 10/306,504 which was filed on November 27, 2002.  *See* '464 patent at p. 1.

50.    IoT Innovations owns all substantial rights, interest, and title in and to the '464 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

51.    The claims of the '464 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of communications devices by sharing of personalized information by providing communications infrastructures to support and capitalize on the different communications devices of the user to provide up-to-date personalized information through a digital gateway.

52.    The written description of the '464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

53.    Defendants have directly infringed and continue to directly infringe one or more claims of the '464 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

54.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '464 patent.

55.    As just one example, Defendants, through the provision and use of the Accused Products, perform a method, comprising selecting a user's communications device from a plurality of communications devices to communicate data between a personal digital gateway and the selected communications device, the data associated with a common user of the personal digital

gateway and of the selected communications device; storing profiles for each of the user's communications devices; retrieving a profile associated with the selected communications device; interpreting the data according to a rule-based engine to categorize the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; processing the data according to an edge side assembler; and communicating the data and the profile to the selected communications device.

56.    Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

57.    Defendants willfully blinded themselves to the existence of the '464 patent and Defendants' infringement, but Defendants had actual knowledge of the '464 patent since at least the time of receiving the original complaint in this action.

58.    Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '464 patent by inducing others to directly infringe said claims.

59.    Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '464 patent by providing or requiring use of the Accused Products.

60.    Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '464 patent, including, for example, claim 1.

61.    Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner;

advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

62.     Defendants are performing these steps, which constitute induced infringement with the knowledge of the '464 patent and with the knowledge that the induced acts constitute infringement.

63.     Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '464 patent.

64.     Defendants' inducement is ongoing.

65.     Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '464 patent.

66.     Defendants have contributed to the direct infringement of the '464 patent by their personnel, contractors, and customers.

67.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '464 patent, including, for example, claim 1.

68.     The special features constitute a material part of the invention of one or more of the claims of the '464 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

69.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

70.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '464 patent.

71.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '464 patent.  Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,474,667

73.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

74.    The USPTO duly issued U.S. Patent No. 7,474,667 (hereinafter, the "'667 patent") on January 6, 2009 after full and fair examination of Application No. 11/879,576 which was filed on July 18, 2007.  *See* '667 patent at p. 1.  A Certificate of Correction was issued on January 1, 2013. *See id.* at p. 18.

75.    IoT Innovations owns all substantial rights, interest, and title in and to the '667 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

76.     The claims of the '667 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices.

77.     The written description of the '667 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     Defendants have directly infringed one or more claims of the '667 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

79.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '667 patent.

80.     As just one example, Defendants, through the use and provision of the Accused Products, perform a method for receiving a selection of a communications device from a plurality of communications devices associated with a common user, receiving the data associated with the selected communications device, accessing a database of rule-based profiles comprising configuration and presentation parameters for the plurality of communications devices, querying the database of rule-based profiles for the selected communications device, retrieving a profile associated with the selected communications device, integrating the data into the profile; and communicating the integrated data and the profile to the selected communications device.

81.     As another example, the Accused Products and associated hardware and software and

functionalities perform a method for receiving a selection of a communications device from a plurality of communications devices associated with a common user, receiving the data associated with the selected communications device, accessing a database of rule-based profiles comprising configuration and presentation parameters for the plurality of communications devices, querying the database of rule-based profiles for the selected communications device, retrieving a profile associated with the selected communications device, integrating the data into the profile; and communicating the integrated data and the profile to the selected communications device.

82.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '667 patent.

83.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

84.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

85.    The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007. *See* '580 patent at p. 1.

86.    IoT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

87.     The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of communications devices by sharing of personalized information by providing communications infrastructures to support and capitalize on the different communications devices of the user to provide up-to-date personalized information through a digital gateway.

88.     The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.     Defendants have directly infringed one or more claims of the '580 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

90.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

91.     As just one example, Defendants through the use and provision of the Accused Products, perform a method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of

communications devices.

92.    As another example, the Accused Products and their associated hardware and software and functionalities perform a method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices.

93.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

94.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

95.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96.    The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007.  *See* '428 patent at p. 1.

97.    IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

98.    The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components and functionalities that improve electronic communications by providing a for the detection and discarding of corrupted data in a data packet using additional checksums.

99.    The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.    Defendants have directly infringed one or more claims of the '428 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

101.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent.

102.    As just one example, Defendants, through the use and provision of the Accused Products and their associated hardware and software and functionalities, perform a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion;

and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

103.    As another example, Defendants, through the use and provision of the Accused Products, perform a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

104.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

105.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,085,796

106.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

107.    The USPTO duly issued U.S. Patent No. 8,085,796 (hereinafter, the "'796 patent") on December 27, 2011 after full and fair examination of Application No. 12/126,137 which was filed on May 23, 2008.  *See* '796 patent at p. 1.

108.    IoT Innovations owns all substantial rights, interest, and title in and to the '796 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

109.    The claims of the '796 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of communications devices by sharing of personalized information by providing communications infrastructures to support and capitalize on the different communications devices of the user to provide up-to-date personalized information through a digital gateway.

110.    The written description of the '796 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

111.    Defendants have directly infringed one or more claims of the '796 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

112.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '796 patent.

113.    As just one example, Defendants, through the provision and use of the Accused

Products, perform a method for selecting a selected communications device from a plurality of communications devices associated with a user, receiving data for communication between a personal digital gateway and the selected communications device, storing profiles for each of the plurality of communications devices, retrieving a profile associated with the selected communications device, interpreting the data for communication according to a rule-based engine, processing the data for communication according to an edge side assembler, and sending the data for communication and the profile from the personal digital gateway to the selected communications device.

114.     Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

115.     Defendants willfully blinded themselves to the existence of the '796 patent and Defendants' infringement, but Defendants had actual knowledge of the '796 patent since at least the time of receiving the original complaint in this action.

116.     Defendants have also indirectly infringed one or more claims of the '796 patent by inducing others to directly infringe said claims.

117.     Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '796 patent by providing or requiring use of the Accused Products.

118.     Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '796 patent, including, for example, claim 1 of the '796 patent.

119.     Such steps by Defendants included, among other things, advising or directing

personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

120.     Defendants are performing these steps, which constitute induced infringement with the knowledge of the '796 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '796 patent.

121.     Defendants' inducement is ongoing.

122.     Defendants have also indirectly infringed by contributing to the infringement of the '796 patent.

123.     Defendants have contributed to the direct infringement of the '796 patent by their personnel, contractors, and customers.

124.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '796 patent, including, for example, claim 1 of the '796 patent.

125.     The special features constitute a material part of the invention of one or more of the claims of the '796 patent and are not staple articles of commerce suitable for substantial non-infringing use.

126.     Defendants' contributory infringement is ongoing.

127.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

128.    Defendants' direct infringement of one or more claims of the '796 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

129.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '796 patent.

130.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

131.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '796 patent.  Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

132.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 8,972,576**

133.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

134.    The USPTO duly issued U.S. Patent No. 8,972,576 (hereinafter, the "'576 patent") on March 3, 2015 after full and fair examination of Application No. 10/833,381 which was filed on

April 28, 2004.  *See* '576 patent at p. 1.

135.    IoT Innovations owns all substantial rights, interest, and title in and to the '576 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

136.    The claims of the '576 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

137.    The written description of the '576 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

138.    Defendants have directly infringed and continue to directly infringe one or more claims of the '576 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

139.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '576 patent.

140.    As just one example, Defendants, through the use and provision of the Accused Products, perform a method for establishing a relationship between a mobile device and a server

in a network, comprising; (a) detecting the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifying a network administrator; (c) in response to receiving authorization from the network administrator to establish the relationship, requesting authorization from the mobile device to authorize the establishment of the relationship; and (d) establishing the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

141.    As another example, Defendants, through the use and provision of the Accused Products, perform a method for establishing a relationship between a mobile device and a server in a network, comprising; (a) detecting the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifying a network administrator; (c) in response to receiving authorization from the network administrator to establish the relationship, requesting authorization from the mobile device to authorize the establishment of the relationship; and (d) establishing the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

142.    Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

143.    Defendants willfully blinded themselves to the existence of the '576 patent and Defendants' infringement, but Defendants had actual knowledge of the '576 patent since at least

the time of receiving the original complaint in this action.

144.    Defendants have also indirectly infringed one or more claims of the '576 patent by inducing others to directly infringe said claims.

145.    Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '576 patent by providing or requiring use of the Accused Products.

146.    Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '576 patent, including, for example, claim 1.

147.    Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

148.    Defendants are performing these steps, which constitute induced infringement with the knowledge of the '576 patent and with the knowledge that the induced acts constitute infringement.

149.    Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '576 patent.

150.    Defendants' inducement is ongoing.

151.    Defendants have also indirectly infringed by contributing to the infringement of the '576 patent.

152.    Defendants have contributed to the direct infringement of the '576 patent by their personnel, contractors, and customers.

153.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '576 patent, including, for example, claim 1.

154.    The special features constitute a material part of the invention of one or more of the claims of the '576 patent and are not staple articles of commerce suitable for substantial non-infringing use.

155.    Defendants' contributory infringement is ongoing.

156.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

157.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '576 patent.

158.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

159.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '576 patent.  Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and

technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

160.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

161.    IoT Innovations requests that the Court find in its favor and against Defendants, and that the Court grant IoT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '830 patent, '576 patent, '796 patent, and '464 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendants account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendants' infringing activities and other conduct complained of herein;

d.    Judgment that Defendants' infringements be found willful as to the'830 patent, '576 patent, '796 patent, and '464 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.     That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.     All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>January 15, 2025</u>                    Respectfully submitted,

By: */s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854) *
Kenneth A. Matuszewski (IL 6324308) *
**ROZIER HARDT MCDONOUGH, PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Telephone: (708) 870-5803
Email: matt@rhmtrial.com
Email: kenneth@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff IOT INNOVATIONS LLC*

* Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet
- Proposed Summons (2)

**List of Supporting Links**

1. U.S. Patent No. 7,280,830, USTPO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830.

2. U.S. Patent No. 7,593,428, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428.

3. U.S. Patent No. 7,567,580, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7567580.

4. U.S. Patent No. 8,972,576, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8972576.

5. U.S. Patent No. 7,474,667, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7474667.

6. U.S. Patent No. 8,085,796, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8085796.

7. U.S. Patent No. 7,379,464, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7379464.